UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DANIEL T. CONDON,                                    Civil No. 08-142 (JRT/FLN)

                    Plaintiff,

v.

MICHAEL J. ASTRUE,                          **REPORT AND RECOMMENDATION**
Commissioner of Social Security,

                    Defendant.

_____

Neut Strandemo, Esq., for Plaintiff .
Lonnie F. Bryan, Assistant United States Attorney, for the Commissioner

_____

Plaintiff Daniel T. Condon seeks judicial review of the final decision of the Commissioner

of Social Security ("Commissioner"), who denied his application for a period of disability and

disability insurance benefits.  See 42 U.S.C. § 1382 (c).  This Court has appellate jurisdiction over

the claim pursuant to 42 U.S.C. §§ 405 (g).  The matter was referred to the undersigned United

States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local

Rule 72.1(c).    The action is now before the Court on cross-motions for summary judgment. For

reasons stated in the following discussion, the Court recommends denying Plaintiff's motion for

summary judgment [No. 8]; and granting Defendant's motion for summary judgment [Docket No.

11].

## I. INTRODUCTION

Plaintiff applied for a period of disability and disability insurance benefits on October

24, 2005. (Tr. 13.) He alleges that he became disabled beginning February 28, 1999. (Tr. 13.)

The alleged onset date was amended at the hearing to November of 2004. The Social Security

Administration denied the application initially on January 7, 2006 and upon reconsideration on March 8, 2006. (Tr. 13.) Plaintiff filed a timely request for a hearing, which was held before Administrative Law Judge ("ALJ") Roger W. Thomas on May 21, 2007. (Tr.13.)  A medical expert ("ME"), Dr. Horozaniecki, and a vocational expert ("VE"), L. David Russell, testified at the hearing. (Tr. 13.)   The ALJ rendered an unfavorable decision dated August 23, 2007.  (Tr. 24.)  The ALJ determined that Plaintiff's residual functional capacity ("RFC"), prevented him from performing his past relevant work, but concluded Plaintiff could perform a significant number of jobs in the national economy.  (Tr. 23.) The Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner.

Plaintiff initiated this action in federal court seeking judicial review on January 14, 2008. (Docket No. 1.) He moved for summary judgment on May 13, 2008. (Docket No. 8.) Plaintiff raises four  issues in his motion: (1) whether the ALJ's decision was based on substantial evidence in the record as a whole; (2)  whether the ALJ erred in not accepting the medical expert's opinion; (3) whether the ALJ incorrectly gave Plaintiff a light work RFC and (4) whether the ALJ failed to consider the side effects of Plaintiff's medications. The Commissioner filed his motion for summary judgment on June 26, 2008. (Docket No. 11.)  We affirm the decision of the ALJ as supported by substantial evidence on the record as a whole.

## II.  STATEMENT OF FACTS

### A.    Background

Plaintiff was born on May 15, 1955. He was 52 years old at the time of the ALJ's hearing. His alleged onset date is November of 2004, the date after which Plaintiff had been abstinent from alcohol. The date Plaintiff was last insured was March 31, 2005. Plaintiff's past relevant work

included work as an aircraft mechanic, supervision of loading and unloading, and as a forklift operator. (Tr. 150.) Plaintiff's activities included working eight hours per week in the Veteran's Home, playing bingo, and writing. (Tr. 801-02, 804.)

###### B.      Medical Evidence

In March 2003, Plaintiff was diagnosed with major depressive disorder and alcohol dependence. (Tr. 414-15.) He received treatment for his alcohol condition through a Veteran's Administration Medical Center. (Tr. 312-22, 334-47).

On December 15, 2004, Plaintiff saw Dr. William Mourad for an orthopedic consultation. Dr. Mourad stated that Plaintiff was evaluated for pain and stiffness in his right shoulder. (Tr. 193.) Plaintiff complained of pain and stiffness resulting from a motorcycle accident. (Id.) The ✓-ray showed "some sclerosis and minute spur of the acromioclavicular joint." (Id.) The diagnosis was a sprained rotator cuff and acromioclavicular joint arthritis.

In August of 2005, Plaintiff had neck surgery for pain in his neck and right shoulder. (Tr. 167, 419, 475.) The discharge summary states that he was taken to surgery on August 22, 2005 and "tolerated the procedure well without any complications." (Tr. 167.) He had a medial partial facetectomy. (Id.)

He was seen at the VA Medical Center in Minneapolis from August 2005 to November 2005.

In January of 2006, Dr. Karayusuf, a psychiatrist, performed a consultative examination. (Tr. 428-30.) Dr. Karayusuf diagnosed alcohol dependence, in remission, and major depression, in partial remission. (Tr. 430.) Dr. Karayusuf also stated that Plaintiff could follow simple instructions, interact appropriately with others, and maintain pace and persistence. (Tr. 430.)

In January of 2006, Dr. Mark, a State Agency medical consultant, reviewed the evidence and

found that Plaintiff could perform light work, lifting up to 20 pounds, and sitting/standing/walking for up to six hours each. (Tr. 445-452.)

In March of 2006, Dr. Salmi, a State Agency medical consultant, reviewed the evidence of record, and agreed with Dr. Mark that Plaintiff was capable of light work. (Tr. 462-64.)

In May of 2006, Plaintiff underwent a second surgery on his neck. (Tr. 472).

In October and November of 2006, Plaintiff was diagnosed with recurrent cellulitis/phlebitis with chronic venous insufficiency. He was advised to wear compression stockings and elevate his leg throughout the day. (Tr. 760, 769.)

In February 2007, VA medical notes indicate that Plaintiff had recurrent cellulitis/phlebitis with chronic venous insufficiency and persistent neck pain. (Tr. 741.)

In March 2007, there was no evidence of deep venous thrombus in Plaintiff's leg. Plaintiff continued to complain of neck pain. (Tr. 691.)

### C.     Plaintiff's Testimony

At the hearing, Plaintiff alleged that he suffered from spinal stenosis of the neck. He has limitation of motion and pain. (Tr. 793.) He stated that he suffered from pain "several times a day." (Tr. 799.) He also stated that he had difficulty in swallowing and right shoulder pain. (Tr. 799, 800.) He testified that he could write or work at a computer for about 15 minutes at which point he would get sharp pains in his neck. (Tr. 805.) The Plaintiff stated that he suffers from pain 90 percent of the time. (Tr. 810.)  He also stated that he gets worn out after answering telephones for four hours at the Veteran's home. (Tr. 807.) He further testified as to the side effects from the pain medication that he is taking, which includes the inability to concentrate, write or use a phone. (Tr. 809.)

### D.     Medical Expert's Testimony

The medical expert, Dr. Horozaniecki, testified that Plaintiff had cervical foraminal stenosis on the right side, causing upper neck and upper extremity pain. (Tr. 812-13.) He also testified that Plaintiff has right shoulder pain due to rotator cuff tendonitis. Further, Plaintiff had obstructive sleep apnea and chronic venous insufficiency in his legs. He also noticed that Plaintiff had burns on his left hand and right leg. (Tr. 813.) Dr. Horozaniecki testified that Plaintiff had at least four episodes of cellulitis, starting in January 2005 and that Plaintiff's condition equaled Listing 4.11(B). (Tr. 814.)

### E.     Vocational Expert's Testimony

Mr. Russell testified at the ALJ hearing as the vocational expert. The ALJ asked whether Plaintiff could perform any jobs if he were limited to simple light work with a sit/stand option and the ability to occasionally elevate his legs. (Tr. 821.) The vocational expert indicated that Plaintiff would be able to perform about 50,000 bench assembly jobs, which would allow sitting and elevation of Plaintiff's legs during the day. (Tr. 821-22.)

### F.     ALJ'S Decision

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential process outlined at 20 C.F.R § 404.1520.  (Tr. 15.)  In the first step of the analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability. (Tr. 15.)  In making this determination, the ALJ concluded that Plaintiff's earnings of $1,166.25 in 2002 did not reach the level necessary to constitute substantial gainful employment. (Tr. 15.)  The next step in the sequential evaluation is to determine whether or not Plaintiff had a severe impairment, defined as an impairment that significantly limits the individual's physical or mental ability to meet the basic demands of work activity.  (Tr. 15.)  The ALJ found that Plaintiff

was severely impaired by cervical degenerative disc disease, chronic venous insufficiency, obstructive sleep apnea, obesity, alcohol abuse and major depressive disorder. (Tr. 15.) The ALJ also found that the venous insufficiency resulted in recurrent cellulitis of the lower extremities. (Tr. 15.) The regulations next require a comparison of the Plaintiff's severe impairment with the impairments listed in Appendix 1, Subpart P, Regulations No. 4, Listing of Impairments. Based on a review of the evidence and the testimony of the medical expert, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the listing of impairments. (Tr. 15.) First, the Plaintiff's degenerative disc disease does not have evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication, as required to meet the listing. (Tr. 15.) Second, the Plaintiff's obstructive sleep apnea has been effectively treated with a CPAP machine, thus it does not meet or medically equal any listed impairment. (Tr. 16.)

Dr. Horozaniecki, the independent medical expert, testified that it is his opinion that the Plaintiff's chronic venous insufficiency equals a listing of impairments in Section 4.11B. (Tr. 16.) Dr. Horozaniecki noted that the record shows that Plaintiff has had four episodes of acute cellulitis. However, the ALJ failed to place significant weight on Dr. Horozaniecki's opinion because it was inconsistent with the overall objective evidence of record. (Tr. 16). Plaintiff experienced one episode of cellulitis before the date he was last insured, in January 2005. (Tr. 16.) The ALJ found that there was no evidence that it was a recurrent condition at that time, thus it does not meet any listed impairment. (Tr. 16.)

The last two steps in the evaluation require the ALJ to determine whether the claimant has the residual functional capacity (RFC) to perform his past relevant work, or lastly, any other work

existing in significant numbers in the national economy.  (Tr. 17-23.)  In determining Plaintiff's

residual functional capacity, the ALJ considered the medical record, the vocational expert's

testimony, Plaintiff's testimony, and the credibility of Plaintiff's subjective complaints in accordance

with 20 C.F.R. § 404.1529 and Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

The ALJ found the Plaintiff credible to the extent he would experience the alleged

symptoms, yet Plaintiff's statements concerning the intensity, persistence and limiting effects of

these symptoms were not credible. (Tr. 18.) The objective medical evidence stated by the ALJ

includes the following evidence. First, ✓-rays of the shoulder performed on November 19, 2004,

showed some sclerosis and minute spur of the acromioclavicular joint. (Tr. 18.) Plaintiff was treated

with Xylocaine and DepoMedrol, which reduced the pain and restored Plaintiff's full range of

motion. (Tr. 18.) Further, the ALJ found that in August of 2005, the Plaintiff underwent right C5 and

C6-7 foraminotomy and reported improved pain in his right arm and good strength after that

procedure. (Tr. 18.) Second, in October 2005, Plaintiff was concerned about not getting adequate

pain medication for his neck and shoulder pain. The doctor noted that Plaintiff was being tapered

off the narcotic medication and Plaintiff had full range of motion in his neck and shoulder. (Tr. 18.)

Third, on May 22, 2006, Plaintiff underwent C6-7 anterior cervical discectomy and fusion with

allograft and plate. (Tr. 19.) After that operation, Plaintiff's arm pain was improved and he had full

arm strength, although his neck pain persisted. (Tr. 19.) Finally, the objective medical evidence

reported that Plaintiff has experienced difficulty with chronic venous insufficiency and experienced

one episode of cellulitis prior to his date last insured.  (Tr. 19.) It was treated with antibiotics and

he was advised in 2006 to wear compression stockings and elevate his leg throughout the day. (Tr.

19.) Plaintiff was also assessed with obstructive sleep apnea, which has been controlled by a CPAP

unit. (Tr. 19).

The ALJ found that these medical reports were inconsistent with the Plaintiff's assertions of disability. The ALJ noted that Plaintiff has seen significant improvement after both of his surgeries. (Tr. 19.) Plaintiff reported that he had complete relief of right arm pain and good relief of shoulder pain as a result of the surgeries. (Tr. 19.) Plaintiff has continued to complain of neck pain, yet has not demonstrated any neurological findings upon examination or required further surgeries. (Tr. 19.) Plaintiff does have cellulitis, but still has the ability to stand or walk. (Tr. 19.) Plaintiff's sleep apnea has been controlled by a CPAP machine. (Tr. 19.) These inconsistencies between the Plaintiff's subjective complaints of disability and the objective medical evidence reduced the Plaintiff's overall credibility to the ALJ. (Tr. 19.)

The ALJ also found that the Plaintiff's treatment was inconsistent with his disability assertions. (Tr. 19.) The Plaintiff reported significant improvement after both of his surgeries, yet continued to take narcotic pain medication. (Tr. 19.) The ALJ also noted that Plaintiff's treating health care providers expressed some concerns with his use of narcotic pain medication and have attempted to wean him off his medication. (Tr. 19.) While he did have cellulitis, there was no evidence on the record that his treating physicians told Plaintiff to stay completely off his feet. (Tr. 19.) The ALJ found that this treatment indicates that the Plaintiff's impairments are not as severe as he asserts. (Tr. 19.)

The ALJ also took into account Plaintiff's sporadic work history prior to 1993, his lack of effort to find other employment and his lack of participation in a vocational rehabilitation program. (Tr. 19.) The ALJ stated that Plaintiff's lack of effort to find other employment reduces his credibility. (Tr. 19.)

The ALJ gave significant weight to the opinion of Dr. Mark, who stated that Plaintiff is able to lift 20 pounds occasionally and 10 pounds frequently and can stand and/or walk up to six hours and sit up to six hours in an 8-hour workday. (Tr. 20.) As to Plaintiff's mental impairments, the ALJ found that Plaintiff received outpatient treatment twice for alcohol abuse and had been assessed with depression. (Tr. 20.) In March 2003, Plaintiff reported that he was able to perform activities of daily living without problems and his memory appeared intact. (Tr. 20.) At a consultative exam with Dr. Karayusuf on January 12, 2005, Plaintiff's concentration and memory were noted to be intact and he was assessed with alcohol dependence, in remission, and major depression, in partial remission. (Tr. 20-21.) Dr. Karayusuf also opined that Plaintiff is able to understand, retain and follow simple instructions and is able to interact appropriately with fellow workers, supervisors and the public. (Tr. 22.)

The ALJ found that there were only mild difficulties for the Plaintiff in social settings. (Tr. 21.) Plaintiff got along with his roommate, spoke to his father regularly and had a long-distance relationship. (Tr. 21.) Further, the ALJ found that Plaintiff experienced moderate difficulties maintaining concentration, persistence and pace. (Tr. 21.) The ALJ found that the Plaintiff's mental impairments are not as severe as Plaintiff asserts. (Tr. 21.)

Based on the evidence, the ALJ determined that Plaintiff had the RFC for the range of light work with simple instructions. (Tr. 22.) With this RFC and the testimony of the VE, the ALJ concluded that Plaintiff could not perform his past relevant work as an aircraft mechanic and a supervisor of loading and unloading. (Tr. 22.) The vocational expert testified that Plaintiff was capable of jobs such as bench assembly, which exist within the regional economy. (Tr. 23.) Therefore the ALJ concluded that Plaintiff did not meet the relevant statutory criteria for a finding

of disability at any time through the date of the decision.  (Tr. 23.)

### III.  STANDARD OF REVIEW

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence on the record as a whole.  See 42 U.S.C. § 405(g);  see also Qualls v. Apfel, 158 F.3d 425, 427 (8th Cir.1998); Gallus v. Callahan, 117 F.3d 1061, 1063 (8th Cir.1997); Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir.1989).   Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  See Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co., v. NLRB, 305 U.S. 197, 220 (1938)).   In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight.  See Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir.1999); see also Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir.1989) (citing Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision.  See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir.2000); see also Gaddis v. Chater, 76 F.3d 893, 895 (8th Cir.1996).  "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently."  Roberts v. Apfel, 22 F.3d at 468. (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir.2000); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993)).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Id.  Therefore, our review of the ALJ's factual determinations is

deferential, and we neither re-weigh the evidence, nor review the factual record de novo.  See Flynn

v. Chater, 107 F.3d 617, 620 (8th Cir.1997); Roe v. Chater, 92 F.3d 672, 675 (8th Cir.1996).  The

Court must "defer heavily to the findings and conclusions of the SSA."  Howard v. Massanari, 255

F.3d 577, 581 (8th Cir.2001).

Disability is defined as "the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months."  20

C.F.R. § 404.1505(a).  In making the disability determination the Secretary promulgated a sequential

evaluation process which applies to both physical and mental disorders.  20 C.F.R. §404.1520

outlines the five-step sequential process used by the ALJ to determine whether a claimant is

disabled.  The disability determination requires a step-by-step analysis.  See 20 C.F.R. §404.1520(a).

At the first step, the ALJ must consider Plaintiff's work history.  At the second step, the ALJ must

consider the medical severity of Plaintiff's impairments.  At the third step, the ALJ must consider

whether Plaintiff has an impairment or impairments that meet or equals one of the listings in

Appendix 1 to Subpart P of the regulations.  See 20 C.F.R. 404.1520(d).  If Plaintiff's impairment

does not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of

Plaintiff's residual functional capacity and Plaintiff's past relevant work.  If the ALJ determines that

the claimant can still perform his or her past relevant work, the ALJ will find that the claimant is not

disabled.  If the claimant cannot perform his or her past relevant work, then the "burden shifts to the

Commissioner to prove, first, that the claimant retains the [RFC] to perform other kinds of work,

and, second, that other such work exists in substantial numbers in the national economy."

Cunningham v. Apfel, 222 F.3d 496, 501 (8th Cir.2000).

## IV.  CONCLUSIONS OF LAW

The four issues that Plaintiff brings this appeal upon are: (1) whether the ALJ's decision was based on substantial evidence in the record as a whole; (2)  whether the ALJ erred in not accepting the medical expert's opinion; (3) whether the ALJ incorrectly gave Plaintiff a light work RFC and (4) whether the ALJ failed to consider the side effects of Plaintiff's medications.[1]

**A.      The ALJ Determination that the Medical Expert's opinion should not have Controlling Weight is Supported By Substantial Evidence on the Record as a Whole.**

Plaintiff argues that the ALJ erred in not accepting the opinion of the independent medical expert.   Dr. Horozaniecki testified at Plaintiff's hearing and stated that Plaintiff equaled Listing 4.11, Part B, based on his venous insufficiency. (Tr. 16.) In this case, the ALJ relied on Dr. Mark's opinion, which was supported by Dr. Salmi. (Tr. 462-64.) The Plaintiff asserts that the medical exhibits did not contain 317 pages of medical records from the Veteran's Administration Medical Center, which Dr. Horozaniecki had the opportunity to review and Dr. Mark and Dr. Salmi did not review.

These records all relate to a period after March 2005, the date Plaintiff was last insured.  To be entitled to disability benefits, Plaintiff had to establish that he was disabled prior to the expiration of his insured status. 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.315(a)(1), 404.320(b)(2); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

---

[1]Whether the ALJ's decision was supported by substantial evidence on the record as a whole is the overarching issue in every social security appeal.  In his memorandum in support of his motion for summary judgment, the substantive argument made in connection with the first two issues is virtually identical.  Plaintiff contends the ALJ erred in rejecting Dr. Horozaniecki's opinion that Plaintiff equaled Listing 4.11(B) for venous insufficiency.  The Court will address both of Plaintiff's first two issues in Part IV.A. of this Report and Recommendation.

The ALJ's decision to rely on the two other medical expert opinions was valid. While there was new evidence that only Dr. Horozaniecki evaluated, this new evidence did not date back prior to March 2005, the date Plaintiff was last insured. (Tr. 760, 769.) Section 4.11B of the Listing is met when an individual's chronic venous insufficiency has resulted in varicosities, dermatitis and recurrent ulceration which has not been healed following at least three months of prescribed medical or surgical therapy. The Plaintiff only experienced one episode of cellulitis prior to the date he was last insured. This episode, which occurred on January 7, 2005, was treated with antibiotics for five to seven days. He was not prescribed compression stockings until November, 2006. (Tr. 16.) Therefore, there was no recurrent condition prior to March of 2005 and the condition was treated with antibiotics in five to seven days. The ALJ correctly concluded that before March 2005, Plaintiff did not meet or medically equal any listed impairment.

**B.      The Vocational Expert's Testimony Was Not Based Upon A Faulty Hypothetical Question.**

Plaintiff further argues that by improperly rejecting the opinion of Dr. Horozaniecki, the ALJ assigned the Plaintiff a faulty Residual Functional Capacity (RFC). Dr. Horozaniecki gave the Plaintiff a sub-sedentary RFC. (Tr. 820-21.) Plaintiff asserts that the hypothetical question posed to the Vocational Expert was faulty because the ALJ erred in rejecting the opinion of Dr. Horozaniecki in favor of the opinion from Dr. Mark that Plaintiff was capable of light work.  (Tr. 444-447)  Dr. Salmi also reviewed the evidence in the file and concurred in Dr. Mark's assessment. (Tr. 463).

The ALJ found that the Plaintiff had the RFC to perform light work, "defined as lifting 20 pounds occasionally and 10 pounds frequently and can stand and/or walk up to six hours and sit up to six hours in an eight-hour workday with a sit/stand option and the opportunity to elevate his legs when seated." (Tr. 17.) The ALJ chose to give the opinion of Dr. Horozaniecki little weight because

he determined that it was based upon evidence after the date Plaintiff was last insured. Further, Dr.

Horozaniecki's opinion was inconsistent with the record as a whole and was not well supported by

objective medical evidence. "A hypothetical is sufficient if it sets forth impairments supported by

substantial evidence in the record and accepted as true by the ALJ." Davis v. Apfel, 239 F.3d 962,

966. (8th Cir. 2001). In this case, the ALJ reasonably based his hypothetical question on the opinions

of Dr. Mark and Dr. Salmi.

The ALJ expressly referenced the RFC assessment prepared by Dr. Mark and expressly

stated that he placed,

> "significant weight on Dr. Mark's opinion, as he had the opportunity
> to review the claimant's medical record, providing him with
> longitudinal knowledge of the claimant's impairments and
> placing him in a good position to assess his resulting limitations."

Dr. Mark's assessment describes in some detail the evidence that supports his conclusions

regarding the Plaintiff's RFC. Dr. Mark relied primarily upon an x-ray report from November 2004

and the fact that Plaintiff had surgery in August 2005. Dr. Mark concluded that Plaintiff could

occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk

about 6 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday and push or pull

limited to upper extremities. (Tr. 446-447).

Substantial evidence on the record as a whole supports the ALJ's decision not to give

controlling weight to the opinion of Dr. Horozaniecki because it is contrary to the opinions of other

physicians and not supported by objective medical evidence. While Dr. Mark and Dr. Salmi

restricted Plaintiff to light work, Dr. Horozaniecki disagreed by limiting Plaintiff to staying off his

feet entirely and elevate his legs until the condition cleared up. He also stated that the condition was

a recurring condition. (Tr. 817.) As the ALJ adequately explained his reasons for accepting Dr.

14

Mark's opinion, (which was agreed to by Dr. Salmi), and for rejecting Dr. Horozaniecki's opinion,

the hypothetical question posed to the vocational expert was not faulty. The question set forth the

impairments that were supported by substantial evidence in the record and accepted as true by the

ALJ. The vocational expert's answer therefore constitutes substantial evidence to support the ALJ's

conclusion regarding whether there are jobs the Plaintiff can perform in the economy.

**C.      The ALJ Properly Considered the Side Effects from Plaintiff's Medication.**

Plaintiff argues that the ALJ did not consider his medication side effects when determining

his ability to work. When asked about the side effects of the narcotic medication that he takes,

Plaintiff stated that he could not concentrate or write or use the phone. (Tr. 809.)

The ALJ had to consider all of the evidence, including prior work records, observations by

third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain,

precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and

functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984). (Emphasis

added.)  The ALJ is required to make an express credibility determination explaining why he did

not fully credit Plaintiff's complaints. See Ghant v. Bowen, 930 F.2d 633, 637 (8th Cir.1991).  The

ALJ may not discount a claimant's complaints solely because they are not fully supported by the

objective medical evidence, but the complaints may be discounted based on inconsistencies in the

record as a whole. See Polaski, 739 F.2d at 1322.  Where adequately explained and supported,

credibility findings are for the ALJ to make. See Tang v. Apfel, 205 F.3d 1084, 1087 (8th Cir.2000).

To guide its analysis, the ALJ must consider all evidence pertaining to Plaintiff's subjective

complaints including his prior work record, and physicians' and other third parties' observations

relating to such matters as: (1) claimant's daily activities; (2) the duration, frequency, and intensity

15

of the pain; (3) precipitating and aggravating factors; (4) <u>dosage, effectiveness and side effects of medication</u>, and (5) functional restrictions. <u>See</u> <u>Polaski</u>, 739 F.2d at 1322. (Emphasis added.)

The ALJ considered all of the evidence relevant to Plaintiff's side effects from his medication under the <u>Polaski</u> standard. There is no indication that Plaintiff asked to adjust his medication, and the ALJ further found that Plaintiff's limitations were not significant.

In making his determination, the ALJ, applying the applicable <u>Polaski</u> standard, properly and specifically identified inconsistencies appearing on the record that undermine Plaintiff's credibility. These inconsistencies include that the side effects from the medication were not severe enough to warrant consideration in determining the RFC. Further, the Plaintiff testified that he had numerous activities, including working 8 hours per week in the Veteran's Home where he lived, playing bingo, and writing short stories everyday. (Tr. 801-02, 804.) After careful review of the record, the Court concludes that the ALJ's reasoning was adequately explained.

## V. RECOMMENDATION

Based on the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Plaintiff's Motion for Summary Judgment [Docket # 8] be **DENIED**; and

2.      Defendant's Motion for Summary Judgment [Docket # 11] be **GRANTED**.

DATED: November 13, 2008          *s/ Franklin L. Noel*
                                       FRANKLIN L. NOEL
                                       United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 3, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500

words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.